HUDSON, JUDGE:
 

 ¶ 1 On August 4, 2015, George Wesley Gilchrist, Jr., was charged with thirteen (13) counts of Cruelty to Animals, in violation of 21 O.S.2011, § 1685, in the District Court of Grant County, Case No. CF-2015-21. Gilchrist was bound over at preliminary hearing on all counts. Gilchrist thereafter filed a motion to quash alleging,
 
 inter alia
 
 , that he could only be charged with a single count of Cruelty to Animals because the evidence showed the dogs in question were all found in one location and that their care had been abandoned for roughly the same period of time. The State filed a responsive pleading to the motion to quash and a hearing was held on the matter on July 6, 2016. At the conclusion of this hearing, the Honorable Paul K. Woodward, District Judge, sustained the motion to quash and dismissed Counts 2- -13.
 

 ¶ 2 Appellant, the State of Oklahoma, now appeals. We exercise jurisdiction pursuant to 22 O.S.2011, § 1053(4).
 
 See
 

 Tilley v. State ex rel. Scaggs
 
 ,
 
 1993 OK CR 52
 
 , ¶¶ 5-6,
 
 869 P.2d 847
 
 , 849 ;
 
 State v. Truesdell
 
 ,
 
 1980 OK CR 97
 
 , ¶¶ 2-3,
 
 620 P.2d 427
 
 , 428,
 
 overruled on other grounds
 
 ,
 
 State v. Hammond
 
 ,
 
 1989 OK CR 25
 
 , ¶ 6,
 
 775 P.2d 826
 
 , 828. For the reasons discussed below, we reverse the District Court's ruling.
 

 BACKGROUND
 

 ¶ 3 The State's evidence at preliminary hearing showed Gilchrist deprived thirteen (13) dogs of food, water and adequate shelter while they were confined near a grove of trees on his rural Grant County property. Two of the dogs were chained separately to small metal shelters; the other eleven were separately penned. An overwhelming smell of
 rotting carcass permeated the air when investigators arrived; a pile of cattle bones was found nearby. Photographs of all but one dog were introduced as exhibits. These photos show emaciated and dehydrated dogs, separately chained or penned, with no food or fresh water despite sweltering July temperatures near 100 degrees. At most, small amounts of muddy, undrinkable water were found in some of the pens and bones with rotting carcass and fat were found within reach of many of the dogs.
 

 ¶ 4 Dr. Erica League, an Enid veterinarian, examined the thirteen dogs at the scene and found they were each in desperate need of immediate medical care. The dogs were all dehydrated and desperate for water. The first two dogs she examined were extremely dehydrated and near death. Dr. League attributed this to the fact that these two dogs had less shade from nearby trees than the others. The first chained dog was going into shock, had its chain wrapped around a tree branch and couldn't stand up. When given fresh water, the dog simply vomited it out because it had gone without water for so long. The second chained dog was lying on his side while drifting in and out of consciousness. This dog also had muscle fasciculation suggestive of seizure activity and was extremely feverish.
 

 ¶ 5 Most of the thirteen dogs were malnourished and poorly conditioned-many with sunken eyes and visible ribs. No feces were observed in and around the dogs suggesting they had not eaten recently. Many of the dogs were infested with fleas, ticks and maggots. Some of the dogs too had visible wounds and injuries that were left untreated. The decomposing carcass of a fourteenth dog was found in a nearby pen. In Dr. League's opinion, none of the thirteen dogs had been fed or watered within the 48 hours previous to their discovery by law enforcement. Dr. League opined that the bones with rotting flesh and fatty tissue found in the dog pens had been there for less than 24 hours. Thus, Dr. League estimated no one had been there for at least 24 to 48 hours.
 

 ¶ 6 Twelve of the dogs were taken by the Tulsa Humane Society. The second chained dog later died while in Dr. League's care. Dr. League conducted a necropsy of this dog and concluded it died of hyperthermia attributable to lack of access to adequate shade, fresh water and fresh food. She found only a large piece of ingested bone and digested soil in the dog's digestive tract. This, combined with the overall lack of fatty tissue she observed internally, indicated a lack of nutrition and adequate food source for this dog. Based upon her examination, the other twelve dogs were all headed for this same fate but the demise of eleven of these dogs was slowed somewhat by shade provided from the nearby trees.
 

 ¶ 7 The State filed a separate count for each of the thirteen living dogs found on Gilchrist's property. The motion to quash filed by Gilchrist argued that Counts 2- -13 of the information subjects him to multiple punishments for the same offense in violation of the Double Jeopardy Clause. Gilchrist claimed too that his conviction on Counts 2- -13 would violate the statutory prohibition against double punishment for the same offense contained in 21 O.S.2011, § 11. These claims were premised on Gilchrist's interpretation of the animal cruelty statute under which he was charged, i.e., 21 O.S.2011, § 1685. Gilchrist argued he could only be charged with a single count of Cruelty to Animals because the evidence showed the dogs in question were all found in one location and that their care had been abandoned for roughly the same period of time.
 

 ¶ 8 The district court, noting the absence of any cases on point, granted Gilchrist's motion to quash from the bench and dismissed Counts 2- -13. This appeal ensued.
 

 ANALYSIS
 

 ¶ 9 We first address whether this Court has jurisdiction to hear this appeal. "[T]he State can only bring this appeal if it is authorized by one of the limited instances listed in Section 1053 of Title 22 of the Oklahoma Statutes. This statutory authority cannot be enlarged by construction."
 
 State v. Campbell
 
 ,
 
 1998 OK CR 38
 
 , ¶ 6,
 
 965 P.2d 991
 
 , 992.
 

 ¶ 10 In determining whether § 1053 affords the State an appeal, we review the
 nature of the judgment or order below to ascertain if it falls within Section 1053's jurisdictional limits.
 
 See
 

 Campbell
 
 ,
 
 1998 OK CR 38
 
 , ¶ 7,
 
 965 P.2d at 992
 
 . Specifically, we review the substance of the relief requested regardless of the title affixed to the motion or pleading.
 
 See
 

 State v. Delso
 
 ,
 
 2013 OK CR 5
 
 , ¶ 5,
 
 298 P.3d 1192
 
 , 1193 ;
 
 State v. Thomason
 
 ,
 
 2001 OK CR 27
 
 , ¶ 14,
 
 33 P.3d 930
 
 , 934.
 

 ¶ 11 Examining the legal underpinnings of the defendant's request and the district court's ruling in the present case, we find that the district court's order granting Gilchrist's motion to quash fits comfortably within the statutory confines of 22 O.S.2011, § 504.1 and the full range of issues underlying the State's appeal are properly before us under Section 1053(4). Although Gilchrist presented a motion to quash asserting a double jeopardy violation the claim is animated by the preliminary hearing evidence and his interpretation of the animal cruelty statute. These grounds are interrelated and answer the same basic issue: whether sufficient evidence was presented at preliminary hearing to support Counts 2- -13 or, put another way, whether the preliminary hearing evidence justified bindover on these counts.
 
 See
 

 State v. Franks
 
 ,
 
 2006 OK CR 31
 
 , ¶¶ 4-7,
 
 140 P.3d 557
 
 , 558-59. Thus, the district court's ruling was premised on Section 504.1 and the State is authorized to appeal under 22 O.S.2011, § 1053(4). We now address the merits of this appeal.
 

 ¶ 12 The standard of review governing our analysis of the State's appeal in this case is the following:
 

 Title 22 O.S.2011, § 504.1(A) allows a defendant to file a motion to quash for insufficient evidence in felony cases after preliminary hearing. The defendant must establish beyond the face of the indictment or information that there is insufficient evidence to prove any one of the necessary elements of the offense for which the defendant is charged. Title 22 O.S.2011, § 1053(4), establishes an appeal by the State upon a judgment for the defendant on a motion to quash for insufficient evidence in a felony matter.
 
 State v. Davis
 
 ,
 
 1991 OK CR 123
 
 , ¶ 4,
 
 823 P.2d 367
 
 , 369. In appeals brought to this Court pursuant to 22 O.S.2011, § 1053, this Court reviews the trial court's decision to determine if the trial court abused its discretion.
 
 State v. Hooley
 
 ,
 
 2012 OK CR 3
 
 , ¶ 4,
 
 269 P.3d 949
 
 , 950. An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue.
 
 Cuesta-Rodriguez v. State
 
 ,
 
 2010 OK CR 23
 
 , ¶ 19,
 
 241 P.3d 214
 
 , 225. An abuse of discretion has also been described as "a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented."
 
 Stouffer v. State
 
 ,
 
 2006 OK CR 46
 
 , ¶ 60,
 
 147 P.3d 245
 
 , 263 (internal citation omitted).
 
 See also
 

 Neloms v. State
 
 ,
 
 2012 OK CR 7
 
 , ¶ 35,
 
 274 P.3d 161
 
 , 170.
 

 Delso
 
 ,
 
 2013 OK CR 5
 
 , ¶ 5,
 
 298 P.3d at 1193-94
 
 .
 

 ¶ 13 At preliminary hearing, the State is required to present sufficient evidence to establish (1) probable cause that a crime was committed, and (2) probable cause to believe that the defendant committed the crime. 22 O.S.2011, § 258 ;
 
 State v. Juarez
 
 ,
 
 2013 OK CR 6
 
 , ¶ 11,
 
 299 P.3d 870
 
 , 873.
 
 State v. Heath
 
 ,
 
 2011 OK CR 5
 
 , ¶ 7,
 
 246 P.3d 723
 
 , 725. The State did precisely that in the present case for all thirteen counts alleged in the information.
 

 ¶ 14 The district court's interpretation and application of 21 O.S.2011, § 1685 was wrong as a matter of law.
 
 See
 

 State v. Tran
 
 ,
 
 2007 OK CR 39
 
 , ¶ 7,
 
 172 P.3d 199
 
 , 200 ("We review matters of statutory interpretation
 
 de novo.
 
 "). "Statutes are to be construed according to the plain and ordinary meaning of their language. When interpreting statutory provisions, our paramount concern is to give effect to the Legislature's intention."
 
 Moss v. Okla. Dept. of Corrections
 
 ,
 
 2016 OK CR 23
 
 , ¶ 18,
 
 403 P.3d 379
 
 (internal citations omitted). Section 1685 repeatedly uses the singular noun "any animal" to refer to the beneficiary of the statute's protection from the various acts of abuse and maltreatment delineated therein.
 
 [1]
 
 The clear statutory intent
 is to proscribe the abuse and maltreatment defined in Section 1685 when inflicted against
 
 any
 
 particular animal. There is nothing ambiguous on this point. Indeed, a parallel provision in 21 O.S.2011, § 1680.4 allows authorities to take into protective custody any abused or maltreated animal as defined in Section 1685. The Legislature's singular focus in this overall statutory scheme to protect individual abused or maltreated animals as defined in Section 1685 undermines Gilchrist's claim that he may only be charged with one count of animal cruelty in this case. A construction of Section 1685 limiting its application in the manner proposed by Gilchrist would defeat, rather than effect, its objects and would not promote justice. 25 O.S.2011, § 29 (Oklahoma statutes "are to be liberally construed with a view to effect their objects and to promote justice.").
 

 ¶ 15 Here, the State filed one count for each of the thirteen living dogs recovered from Gilchrist's property. The record in the present case shows each dog was separately chained or penned on Gilchrist's property. The record supports the proposition that each dog needed to be fed and watered separately. Gilchrist deprived all thirteen dogs of the food, water and shelter necessary to avoid the grotesque suffering observed at the scene. Several dogs were also deprived of veterinary care for various injuries and wounds. Gilchrist's separate abuse and maltreatment of each dog supports the thirteen counts filed by the prosecutor. All things considered, the district court abused its discretion in granting Gilchrist's motion to quash.
 

 DECISION
 

 ¶ 16 The District Court's order sustaining Appellee's motion to quash is
 
 REVERSED AND REMANDED
 
 with instructions to
 
 REINSTATE COUNTS 2- -13
 
 . Pursuant to Rule 3.15,
 
 Rules of the Oklahoma Court of Criminal Appeals
 
 , Title 22, Ch.18, App. (2017), the
 
 MANDATE
 
 is
 
 ORDERED
 
 issued upon the delivery and filing of this decision.
 

 LUMPKIN, P.J.: CONCUR
 

 LEWIS, V.P.J.: CONCUR
 

 Title 21 O.S.2011, § 1685 states:
 

 Any person who shall willfully or maliciously torture, destroy or kill, or cruelly beat or injure, maim or mutilate
 
 any animal
 
 in subjugation or captivity, whether wild or tame, and whether belonging to the person or to another, or deprive
 
 any
 
 such
 
 animal
 
 of necessary food, drink, shelter, or veterinary care to prevent suffering; or who shall cause, procure or permit
 
 any
 
 such
 
 animal
 
 to be so tortured, destroyed or killed, or cruelly beaten or injured, maimed or mutilated, or deprived of necessary food, drink, shelter, or veterinary care to prevent suffering; or who shall willfully set on foot, instigate, engage in, or in any way further any act of cruelty to
 
 any animal
 
 , or any act tending to produce such cruelty, shall be guilty of a felony and shall be punished by imprisonment in the State Penitentiary not exceeding five (5) years, or by imprisonment in the county jail not exceeding one (1) year, or by a fine not exceeding Five Thousand Dollars ($5,000.00).
 
 Any animal
 
 so maltreated or abused shall be considered an abused or neglected animal.
 

 (emphasis added).