CITY OF OKLAHOMA CITY v. FONDREN2022 OK CIV APP 17Case Number: 118471Decided: 04/28/2022Mandate Issued: 05/25/2022DIVISION IVTHE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2022 OK CIV APP 17, __ P.3d __

IN THE MATTER OF FOURTEEN EXOTIC PARROT-LIKE BIRDS:

THE CITY OF OKLAHOMA CITY, Appellant,
v.
PAUL FONDREN, Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE DON ANDREWS, TRIAL JUDGE

AFFIRMED

Rita Douglas-Talley, Jason K. Perez, ASSISTANT MUNICIPAL COUNSELORS, Oklahoma City, Oklahoma, for Appellant

R. Scott Adams, Robert W. Gray, ADAMS & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Appellee

JOHN F. FISCHER, CHIEF JUDGE:

¶1 The City of Oklahoma City filed this civil proceeding to require a bond for the care or forfeiture of fourteen exotic parrot-like birds seized from Appellee Paul Fondren during a warrantless search of his property. The City appeals the district court's order granting Fondren's motion to quash and/or suppress that evidence. The district court was not required to transfer that motion to the judge assigned to the criminal case filed against Fondren for cruelty to animals. And, the City failed to demonstrate the existence of exigent circumstances to justify the warrantless search of Fondren's property. The district court's order suppressing the evidence and the order denying the City's motion to reconsider that order are affirmed.

BACKGROUND

¶2 On June 22, 2019, the Oklahoma City Action Center received a complaint about bird noises and a strong odor coming from the garage of a house that appeared to be abandoned. The Action Center forwarded the complaint to the Animal Welfare Department and the Oklahoma City County Department of Health. On June 25, 2019, an Animal Welfare officer visited the property, knocked on the door, and left a courtesy notice which read, "Please contact to confirm care of birds. Failure to contact could result in birds being considered abandoned. Contact us for a welfare check."

¶3 On June 26, 2019, an inspector from the Department of Health visited the home, along with an Animal Welfare officer. The health inspector testified that he observed a bad odor coming from the garage door. He observed hundreds of tiny "roach-like" insects crawling on the exterior of the garage door. The inspector coordinated with a neighbor in order to observe the backyard area, which he found to be overgrown and unkempt. The health inspector testified, "Using the factors that I had observed already . . . I decided to go in. And I consulted with the welfare officer I was with, and we called dispatch and they dispatched the Fire Department and the police to aid in our entry."

¶4 After they entered through the front door of the house, the inspector testified that he observed a "trail of dead roaches that looked like they had been swept up into big piles" and smelled an unpleasant odor. The inspector made his way into the garage and observed:

At that point, which I was able to see the source of the roaches was likely from the filth and the feces that were present in the garage, and once I saw that, that really confirmed that there was a public health nuisance that was here, that was at this property. That, using the other factors that led me to go in, was enough for me to consider the property to be unsafe or unfit for habitation.

The birds were then catalogued and impounded. The City filed a bond/forfeiture proceeding pursuant to section 1680.4 of the Animal Facilities Protection Act, (21 O.S.2011 §§ 1680

¶5 In the bond/forfeiture proceeding, Fondren filed a motion to quash and/or suppress the evidence -- the fourteen birds -- obtained by the City during the search of his property. Fondren argued that the warrantless entry into and search of his property violated his constitutional rights. The City argued that Fondren's motion should be heard by the judge assigned to the felony case. In the alternative, the City argued that its entry into and seizure of Fondren's property was justified under the circumstances. After an evidentiary hearing on Fondren's motion, the district court sustained the motion to quash and/or suppress, ordered the birds returned to Fondren and dismissed case no. CV-2019-1530.

¶6 The City filed a motion to reconsider two days later. The district court denied that motion. The City appeals both rulings.

JURISDICTION

¶7 The City's appeal raises an issue that implicates our jurisdiction to proceed. This Court's jurisdiction "is fundamental . . . and cannot be . . . waived by the parties, or overlooked by the court." In re M.B., 2006 OK 63145 P.3d 1040Hall v. GEO Group, Inc., 2014 OK 22324 P.3d 399

¶8 The City argues that the district court erred when it decided Fondren's motion to suppress evidence. The City contends that matter should have been decided in the criminal case which charged Fondren with felony cruelty to animals pursuant to section 1685 of the Animal Facilities Protection Act. The City points out that a motion to suppress evidence in a felony case is authorized by 22 O.S.2011 § 504.1

¶9 However, the City's right to appeal an adverse ruling from a motion to suppress filed pursuant to that statute is limited. The City can only appeal an adverse ruling in a criminal case "if it is authorized by one of the limited instances listed in Section 1053 of Title 22 of the Oklahoma Statutes." State v. Campbell, 1998 OK CR 38965 P.2d 99122 O.S.2011 § 1053See State v. Gilchrist, 2017 OK CR 25422 P.3d 18222 O.S.2011 § 504.1

¶10 Further, the Oklahoma Court of Criminal Appeals has "exclusive appellate jurisdiction in criminal cases . . . ." Okla. Const. art. 7, § 4. If Fondren's motion to suppress was a matter exclusively within the jurisdiction of the Court of Criminal Appeals, this case must be transferred to that Court. Movants to Quash Multicounty Grand Jury Subpoena v. Dixon, 2008 OK 36184 P.3d 546

¶11 The City filed this case pursuant to section 1680.4 of the Animal Facilities Protection Act. Whether section 1680.4 is civil or criminal in nature is an issue that has not been previously decided. Section 1680.4 is a statute found in the Oklahoma penal code and the same Act, pursuant to which Fondren was charged with a felony. However, the location of the statute in the penal code is not determinative. Mere placement of a statute within Title 22 does not render the provision, "ipso facto," a criminal statute. Parsons v. Dist. Court of Pushmataha Cty., 2017 OK 97408 P.3d 586Id. "Generally speaking, the demarcation line between civil and criminal subject matter is well-defined and obvious, but that is not always the case. Examples of legal proceedings which have both criminal and civil components include . . . civil forfeiture suits." Id. ¶ 17 (footnote omitted).

¶12 One such example is the civil forfeiture provision of the Uniform Controlled Dangerous Substances Act, 63 O.S.2011 §§ 2-10163 O.S. §§ 2-503State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck, 1988 OK 38753 P.2d 1356Moore v. Brett, 1943 OK 101137 P.2d 539State ex rel. Campbell v. Eighteen Thousand Two Hundred Thirty-Five Dollars, 2008 OK 32184 P.3d 1078Austin v. United States, 509 U.S. 602, 610, 113 S. Ct. 2801, 2806 (1993)). Accord State ex rel. Dugger v. Twelve Thousand Dollars, 2007 OK CIV APP 20155 P.3d 858

¶13 The distinction between a statutory remedy and punishment is foundational. "Issues concerning the determination of the amount of punishment and questions regarding a prisoner's release from confinement are matters which are, without question, within the Court of Criminal Appeal's exclusive appellate jurisdiction over criminal cases." State ex rel. Henry v. Mahler, 1990 OK 3786 P.2d 82Smith v. Oklahoma Dep't Of Corrs., 2001 OK 9537 P.3d 872State ex rel. Campbell v. Eighteen Thousand Two Hundred Thirty-five Dollars, 2008 OK 32In re The Palmyra, 25 U.S. (12 Wheat.) 1, 15 (1827)).

¶14 Campbell held that the confiscation of money found in close proximity to a controlled substance, unless the owner can prove "a legal source for the money," is not punishment, but rather the disgorgement of the proceeds of unlawful activity. Campbell, ¶¶ 12 and 24. Consequently, the constitutional prohibition against excessive fines does not apply: "[B]ecause title 63, subsection 2-503(A)(7) disgorges illegally obtained monies from drug distribution, forfeitures under it are purely remedial and not subject to the Excessive Fines Clause under the United States Supreme Court's jurisprudence." Id. ¶ 30 (footnote omitted).

¶15 In exercising its jurisdiction to decide Campbell, the Supreme Court determined, at least by implication, that forfeitures pursuant to the Uniform Controlled Dangerous Substances Act were civil matters and not within the exclusive jurisdiction of the Court of Criminal Appeals. The Campbell Court's analysis of the remedy/punishment issue is equally applicable here.

¶16 Before a bond can be imposed for the care of animals or a forfeiture ordered pursuant to section 1680.4, the government must show probable cause that the animals were "abused." 21 O.S.2011 § 1680.421 O.S.2011 § 1680.4State v. Gilchrist, 2017 OK CR 25422 P.3d 182Id. Consequently, a bond may be ordered or forfeiture required independent of the guilt or innocence of the owner and independent of a criminal proceeding charging any person with abusing the animal. As with forfeitures pursuant to the Uniform Controlled Dangerous Substances Act, no criminal charges need be filed before seeking forfeiture of an abused animal. See State ex rel. Campbell v. Eighteen Thousand Two Hundred Thirty-five Dollars, 2008 OK 32184 P.3d 1078

¶17 We hold that proceedings filed pursuant to 21 O.S.2011 § 1680.4

STANDARD OF REVIEW

¶18 The City appeals two rulings, the district court's order granting Fondren's motion to quash and/or suppress evidence, and the district court's denial of the City's motion to reconsider. "A ruling to allow or deny the admission of evidence rests in the trial court's sound discretion." In re K.H., 2021 OK 33

¶19 "A motion seeking reconsideration, re-examination, rehearing or vacation of a judgment or final order, which is filed within ten days of the day such decision was rendered, may be regarded as the functional equivalent of a new trial motion, no matter what its title." Horizons, Inc. v. Keo Leasing Co., 1984 OK 24681 P.2d 757Smith v. City of Stillwater, 2014 OK 42328 P.3d 1192Id. (citations omitted).

¶20 This case also involves the interpretation of statutes and their application to undisputed facts. Legal issues are subject to de novo review. Pan v. Bane, 2006 OK 57141 P.3d 555Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125932 P.2d 1100

ANALYSIS

¶21 In its appellate briefing, the City does not distinguish between the two rulings it has appealed. It argues two propositions. First, the City argues it was error for a judge assigned to a civil docket to rule on a motion challenging the admission of evidence relevant to a criminal proceeding. Second, the City argues the district court erred in finding there was insufficient evidence of exigent circumstances to justify the warrantless entry into and search of Fondren's house.

I. The District Court's Authority to Decide the Motion to Quash

¶22 The City argues that it was improper for the district court to decide Fondren's motion to quash and/or suppress evidence in a civil case where there is a parallel criminal case with the same parties and the same facts. In support of this argument, the City cites Rule No. 24(A) of the Official Court Rules of the Seventh Judicial and Twenty-Sixth Administrative Districts: "All motions, demurrers, applications and other preliminary matters in felony criminal cases, pending in the district court, are to be set for hearing on the docket of the assigned district judge at such time as he or she shall direct." The City argues that Fondren's motion to suppress should have been heard in the criminal case, even though it was filed in the civil forfeiture case.

¶23 As previously discussed, proceedings to require a bond for the care of or to forfeit abused animals filed pursuant to 21 O.S.2011 § 1680.422 O.S.2011 § 504.1

¶24 Oklahoma courts look to the content and substance of a motion rather than its title to determine how the motion is treated. Kerr v. Clary, 2001 OK 9037 P.3d 841Messler v. Simmons Gun Specialties, Inc., 1984 OK 35687 P.2d 121

¶25 Fondren's motion asserted his constitutional right to be protected from unreasonable searches and seizures. "The fourth amendment of the United States Constitution and art. 2 § 30 of the Okla. Const. protect a citizen's right to be free from unreasonable searches and seizures. The United States Supreme Court precedents have long recognized the fourth amendment's applicability to civil actions." Atkinson v. Gurich, 2011 OK 12248 P.3d 356See One 1958 Plymouth Sedan v. Penn., 380 U.S. 693, 698, 85 S. Ct. 1246, 1249 (1965) (holding that evidence seized in violation of Fourth Amendment could not be used in proceeding for forfeiture). The same is true in Oklahoma. "The absolute security granted by Okla. Const. art. 2, § 30 against unlawful search or seizure exists without reference to the guilt or innocence of the person whose property was searched, and without consideration of whether the proceeding is civil or criminal in nature." Turner v. Lawton, 1986 OK 51733 P.2d 375See Hess v. State, 1921 OK 411202 P. 310

¶26 The district court stated, "[W]e don't check our constitutional rights at the door. That's fundamental." It is fundamental whether it is law enforcement or the government's civil authorities who want to enter.

¶27 Despite the pendency of its criminal case against Fondren, the City pursued the civil bond/forfeiture proceeding based on the evidence obtained during the warrantless search and seizure. The City's procedural argument deprives Fondren of the "absolute security" guaranteed by the Oklahoma Constitution against an unlawful search or seizure. Turner, 1986 OK 51Jernigan v. Jernigan, 2006 OK 22138 P.3d 539

II. Exigent Circumstances

¶28 In the alternative, the City argues that exigent circumstances existed to search Fondren's property and seize the birds without a warrant. Section 1680.4(B) of Title 21 expressly provides that "Any peace officer or animal control officer may: (1) Specify terms and conditions by which the owner . . . may maintain custody of the animal . . . or (2) Obtain a court order to take custody of any animal found neglected or cruelly treated. . . ." Similarly, the Oklahoma City Municipal Code provides, in relevant part:

the City authority or its authorized agent may apply to the proper magistrate for a search warrant to authorize entry into the designated premises for the purpose of making an inspection to determine the existence of a violation of any provisions of this Code pertaining to the health, welfare or safety of the public.

(Code 1970, § 1-20; Code 1980, § 2-67).

¶29 It is undisputed that City officials did not obtain a court order to take custody of the birds or apply for a search warrant to inspect the inside of Fondren's house. The City argues that neither was necessary, citing its authority pursuant to § 2-66 of the Oklahoma City Municipal Code:

Whenever the proper City inspection authority or its authorized agent deems it desirable to make an inspection of premises in the City, in order to determine the existence of violations of any provision of this Code pertaining to the health, welfare, or safety of the public, he shall be allowed entrance to the premises for these purposes if any of the following conditions exist:

. . .

(2) where an imminent danger to health, welfare, or safety exists.

(Code 1970, § 1-19; Code 1980, § 2-66). In addition, Animal Welfare Officers are authorized to enter private property "without a warrant when: . . . b. there is imminent danger to public health, welfare or safety; or c. there is imminent danger to an animal's health, welfare or safety. . . ." (Ord. No. 23145, § 2, 10-3-06) § 8-18(b)).

¶30 The City argues that the warrantless search of Fondren's home and the seizure of his birds was reasonable because there was "an imminent danger to health, welfare, or safety. . . ." A search that is conducted without a search warrant is presumptively unreasonable under both the Fourth Amendment to the U.S. Constitution and Article 2, § 30 of the Oklahoma Constitution. Dale v. State, 2002 OK CR 138 P.3d 910Id. (quoting Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S. Ct. 2022, 2032 (1971)). Only "the existence of an emergency . . . permits the law enforcement officer to substitute his judgment for that of a neutral and detached magistrate to the existence of probable cause to make a search." Blackburn v. State, 1978 OK CR 24575 P.2d 638Turner v. Lawton, 1986 OK 51733 P.2d 375

¶31 Consequently, the authority provided by the City's Municipal Code to conduct a warrantless search "where an imminent danger to health, welfare, or safety exists" is limited by the Fourth Amendment to the United States Constitution and Article 2, § 30 of the Oklahoma Constitution. The protection afforded by Article 2, § 30 of the Oklahoma Constitution "is broader in scope than its federal counterpart . . . ." Id. ¶ 15. Federal law in this area, therefore, provides the minimum protection available to Fondren.

¶32 One exception to the warrant requirement of the Fourth Amendment permits entry to private property "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." Brigham City v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947 (2006) (citations omitted) (holding that warrantless entry into residence was reasonable where officers observed a physical altercation between occupants through a window). The test is whether there was "an objectively reasonable basis for believing" that medical assistance was required or that occupants were in danger. Michigan v. Fisher, 558 U.S. 45, 49, 130 S. Ct. 546, 549 (2009) (holding that warrantless entry into residence was reasonable pursuant to emergency aid exception where officers observed a person inside, screaming and throwing things) (quoting Brigham City, 547 U.S. at 406). See also Mincey v. Arizona, 437 U.S. 385, 392, 98 S. Ct. 2408, 2413 (1978) (holding that homicide in residence did not justify a four-day warrantless search). This exception is "informed by the practical recognition of critical police functions quite apart from or only tangential to a criminal investigation." U.S. v. Najar, 451 F.3d 710, 714 (10th Cir. 2006) (holding that exigent circumstances justified a warrantless entry after a disconnected 911-call and responding officers observed suspicious movement within the residence).

¶33 As more applicable to the facts in this case, in Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 87 S. Ct. 1727 (1967), the United States Supreme Court applied the Fourth Amendment to administrative searches by municipal health and safety inspectors. The Court recognized that the evidence required to show probable cause for a warrant in a criminal proceeding would not be the same standard required for an administrative search in furtherance of a municipality's health and safety concerns. Id. at 538. Nonetheless, a warrant would be required, even if on a lesser evidentiary showing, and an owner could lawfully refuse a health inspector's demand to enter the owner's dwelling without one. "The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard." Id. at 539. The Court did not "foreclose prompt inspections, even without a warrant, that the law has traditionally upheld in emergency situations." Id. At the same time, the Court recognized that "in the case of most routine area inspections, there is no compelling urgency to inspect at a particular time or on a particular day." Id.

¶34 These authorities resolve the City's argument that exigent circumstances existed to justify the warrantless search and seizure of Fondren's property. The City contends, in its appellate briefing, that the odor of ammonia emanating from the garage, the roach-like bugs on the outside of the garage door, the water cut-off notice, and the sounds of birds in distress were all factors in the determination that exigent circumstances existed. In support of this argument, the City cites People v. Chung, 185 Cal.App.4th 247 (2010). In Chung, a neighbor was awakened in the middle of the night by yelping and howling from the condominium above hers. She called the police and directed them to Chung's condominium. When Chung answered his door, he denied having a dog, but one of the officers heard faint whimpering sounds from inside the condominium. The district court found that "when [the officer] heard the whimpering, Chung's 'credibility went out the window . . . And they had a good reason to think that there was a dog in distress. . . .'" Id. at 259. The Chung court found that "it was reasonable, under the circumstances presented, for the officers to enter Chung's condominium without a warrant and despite Chung's refusal of consent, to check on the welfare of a live dog the officers reasonably believed to be in distress within." Id. at 260. The City urges this Court to adopt the same rationale.

¶35 Chung is distinguishable. First, in Chung, the neighbor heard noises from the upstairs condominium in the middle of the night and police investigated the very same night. In this case, four days passed between the neighbor's complaint to the Action Center on June 22, 2019, and the eventual warrantless search and seizure on June 26, 2019.

¶36 Second, the Chung court relied on a case that was decided by another California appellate court, Broden v. Marin Humane Society, 70 Cal.App.4th 1212 (1999). The Broden court held: "There is no question that law enforcement officers may make a warrantless entry of a building where there are reasonable grounds for believing that persons inside are in need of immediate aid. [California's animal cruelty statute] clearly contemplates that animals shall receive a similar solicitude." Id. at 1222 (citation omitted). Although the City argues that the sound of birds in distress was a factor in the decision to enter Fondren's property without a warrant, we do not find support for that claim in the record. The health department inspector testified:

As a member of the Health Department, we are tasked to investigate public nuisances under the property maintenance code within Oklahoma City ordinances, and I was on-site investigating a property maintenance violation and a public health nuisance. And whenever I used those factors, the backyard, the odor and the roaches, I gauged that there was a public health nuisance that needed to be investigated further.

The inspector did not testify that he decided to enter Fondren's property without a warrant because he heard the sound of birds in distress. And he did not testify that he entered Fondren's property because he perceived an "imminent danger to an animal's health, welfare or safety." (Ord. No. 23145, § 2, 10-3-06) § 8-18(b)(c)). In fact, the only City official to testify regarding the sound of birds was the Animal Welfare inspector who visited the property on June 25. Apparently, she did not perceive that the birds were in distress because she left a notice for Fondren to call "as soon as possible" and took no further action to care for the birds.

¶37 We have no doubt that "imminent danger" to an animal might provide reasonable grounds for a warrantless search or seizure and satisfy the constitutional protection provided by the Fourth Amendment and Article 2, § 30. Nonetheless, there is a difference between the "public health nuisance" described by the health inspector and the "imminent danger to health, welfare, or safety" pursuant to which the City's ordinance authorizes a warrantless entry. (Code 1970, § 1-19; Code 1980, § 2-66).

¶38 In this case, the City failed to show the existence of "imminent danger," much less the exigent circumstances necessary to justify a warrantless search and seizure. The City received a complaint about the property on June 22, and an Animal Welfare officer investigated the complaint on June 25. Although cloaked with municipal authority to conduct a warrantless search in the appropriate circumstances, the Animal Welfare officer elected to leave a "notice" to the owner instead. The condition of Fondren's property was the same on June 26, when the Health Department and Animal Welfare officials made a coordinated visit to the property. And, the evidence of "abuse" submitted by the City -- the pictures of the birds and the testimony of the City's veterinary expert -- was obtained after the warrantless entry of Fondren's property.

¶39 Finally, the health department inspector testified: "[W]e have not been instructed to seek warrants if there's a public health nuisance readily apparent during my visit." This testimony is inconsistent with the City's Municipal Code. The City has not demonstrated that the burden of obtaining a warrant was likely to frustrate the purpose of the search. And, the delay between the complaint and the decision to enter Fondren's property without a warrant would refute any such argument if it had been made.

In assessing whether the public interest demands creation of a general exception to the Fourth Amendment's warrant requirement, the question is not whether the public interest justifies the type of search in question, but whether the authority to search should be evidenced by a warrant, which in turn depends in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search.

Camara v. Mun. Court of San Francisco, 387 U.S. 523, 533, 87 S. Ct. 1727, 1733 (1967). The City's reliance on a history of past complaints concerning Fondren and his animals and an "unofficial process" previously established to resolve those complaints only underscores the absence of exigent circumstances to proceed without a warrant.

CONCLUSION

¶40 The City filed this civil proceeding pursuant to 21 O.S.2011 § 1680.4

¶41 In addition, the City failed to show the existence of exigent circumstances to enter Fondren's property without a warrant. Consequently, the search and seizure of Fondren's property was not authorized by any exception to the State and Federal Constitutional protection against unreasonable search and seizure, and any evidence seized during that search was properly excluded.

¶42 The district court's orders granting Fondren's motion to suppress evidence and denying the City's motion to reconsider are affirmed.

¶43 AFFIRMED.

HIXON, P.J. and BARNES, J., concur.