OSCN Found Document:STATE v. LUEVANO

 

 
 STATE v. LUEVANO2026 OK CR 3Case Number: S-2024-402Decided: 01/29/2026Mandate Issued: 01/29/2026THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA
Cite as: 2026 OK CR 3, __ P.3d __

 

STATE OF OKLAHOMA, Appellant, 
v.
SERGIO LUEVANO, Appellee.

O P I N I O N

HUDSON, JUDGE:

¶1 The State of Oklahoma charged Appellee, Sergio Luevano, by amended Information in the District Court of Tulsa County, Case No. CF--2022--3090, with Assault and Battery With a Dangerous Weapon, in violation of 21 O.S.2021, § 645Miranda warnings to Luevano was defective, failed to convey the substance of his rights, and under the totality of the circumstances presented resulted in an invalid waiver.

¶2 Appellant, the State of Oklahoma, now appeals. We exercise jurisdiction pursuant to 22 O.S.Supp.2022, § 1053REVERSE the District Court's ruling.

I

¶3 The facts of this case are straightforward. At preliminary hearing, Omar Herrera testified through a certified court translator that Luevano approached him, and a group of others, in the parking lot of an east Tulsa apartment on the evening of July 30, 2022. Luevano began insulting Herrera and the others before Luevano's family brought him inside an apartment. Luevano was in a very frantic state and appeared to be high on drugs according to Herrera.

¶4 Later, Luevano returned with his cousin and stabbed Herrera with a knife in the upper chest, above the heart. Luevano was standing next to his cousin when he stabbed Herrera. Luevano's cousin also had a weapon, possibly concealed in his boot. Herrera denied ever hitting or threatening Luevano. After the stabbing, Luevano and his cousin backed away. Luevano retreated inside the apartment as Herrera's friends threw beer bottles at him.

¶5 The record showed that Luevano was arrested for Herrera's stabbing later that night by Officer De La Paz, a police-certified Spanish interpreter for the Tulsa Police Department. De La Paz interviewed Luevano after taking him into custody. The interview took place in the parking lot outside of Luevano's apartment while other police officers investigating the case were present. De La Paz testified that his native tongue is Spanish, he has spoken Spanish his entire life and he routinely serves as an interpreter with Spanish-speaking suspects.

¶6 De La Paz read Luevano the Miranda warnings in Spanish prior to questioning. In the process, De La Paz translated the Miranda warnings from a card in which the warning was written in English. De La Paz testified that Luevano appeared to understand what his rights were and that he chose to speak with the officer at that time. De La Paz denied that he ever threatened Luevano or offered him anything in exchange for agreeing to be interviewed. The officer can be heard on his bodycam video saying in English at the conclusion of the interview that Luevano seemed pretty drunk. 

II

¶7 The main issue at the Jackson-Denno hearing was the effectiveness of the Miranda warnings as translated by De La Paz. The defense called Pilar Post, a certified Oklahoma courtroom interpreter, to challenge De La Paz's translation. Post was born in Mexico City and has spoken Spanish his entire life. Post holds a Bachelor of Arts degree in Linguistics and has worked as an interpreter or translator for over twenty years. Post translated the entire interview shown on the bodycam video between De La Paz and Luevano, including the Miranda warning. Post testified that his written translation of the interview from Spanish to English was true and accurate. This translation was admitted into evidence at the Jackson-Denno hearing and is part of the record on appeal before this Court.

¶8 Post disputed De La Paz's claim to be a translator, let alone certified. Post was unaware of any other certification beyond the one he held in Oklahoma. The following excerpt is a reprint of Post's English translation of De La Paz's reading of the Miranda warning to Appellee:

OFFICER DE LA PAZ: I'm going to translate something, Okay?

LUEVANO: Mm-hmm.

OFFICER DE LA PAZ: You have the right to remain silent, anything you say they are going to use it against you in a...the court of law. You have the right to speak to an attorney, you have the right to have one present with you while they are giving you questions. If you don't have money to be able to pay for an attorney, they will write down one for you to represent you before...before they make the questions, if you want one. If you decide, if you decide to do an, um, if you decide to do a treatment, you can stop at any time, if you give one. Are you understood the rights I have...I have explained to you just now?

Having these rights in mind, do you wish to talk to us now? Yes?

LUEVANO: Yes.

¶9 Defense counsel argued below that De La Paz's reading of the Miranda warnings to Luevano was defective because he used the word "treatment" instead of statement. Defense counsel further argued that the State failed to prove a knowing waiver of rights with this error, especially considering Luevano's apparent intoxication that night, the hesitant responses given by him in agreeing to speak and his inconsistent answers during the interview itself. Defense counsel requested that Luevano's statement be suppressed "based on [Luevano] arguably being high and/or drunk . . . and also the fact that Miranda was not properly applied and not properly given."

¶10 The State responded that the Miranda warning does not have to be read verbatim; that the officer during the interview itself did not state that Luevano was drunk; that the level of intoxication apparent from the bodycam video and the statement itself was insufficient to require suppression; and the totality of circumstances showed Luevano made a valid waiver of his rights in choosing to speak with the officer and understood what he was doing.

¶11 The district court granted Luevano's motion to suppress. The district court observed there was no evidence of intimidation or coercion by the officers relating to Luevano's waiver of rights. However, the district court noted that intoxication was a factor at play with Luevano's waiver and that De La Paz did not testify to the factors he looked for to determine whether a person is intoxicated. The district court also cited the victim's testimony that Luevano was agitated and high. The district court stated, however, that its "main concern" was the officer's use of the word "treatment' in reading the Miranda warnings.

¶12 The district court recognized that Miranda warnings do not have to be read verbatim but questioned whether Luevano really understood his rights since they were not read verbatim. Specifically, did Luevano really know that he had the right to a court-appointed attorney before he made a statement, and whether he knew that he could stop answering questions at any time and ask for an attorney. Based on the totality of the circumstances, the district court found that the State failed to prove by preponderance of the evidence that Luevano's statement was made with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon it.

III

¶13 We must first address whether this Court has jurisdiction to hear this appeal. "[T]he State can only bring this appeal if it is authorized by one of the limited instances listed in Section 1053 of Title 22 of the Oklahoma Statutes. This statutory authority cannot be enlarged by construction." State v. Gilchrist, 2017 OK CR 25422 P.3d 182Gilchrist, 2017 OK CR 25

¶14 Title 22 O.S.Supp.2022, § 1053State v. Sayerwinnie, 2007 OK CR 11157 P.3d 137

¶15 The State argues that Luevano's statement to De La Paz was a "key part" of the prosecution's case-in-chief. The State reasons that the victim was unclear at the preliminary hearing as to who exactly stabbed him until after the incident occurred. Luevano, by contrast, admitted stabbing the victim in his statement to De La Paz. The State argues that the district court's order suppressing Luevano's statement impairs its ability to prosecute the case and appellate review thus would be in the best interests of justice.

¶16 Luevano argues that we should decline review of this appeal. Luevano says the State has made no showing that it cannot proceed without the suppressed evidence. Indeed, Luevano argues that his suppressed statement "is only one part of a substantial case-in-chief and will not act as a dismissal or prevent the prosecutor from making a strong case at trial." Luevano tells us that the State has a video of the actual fight, along with the victim's testimony and four other witnesses to this incident.

¶17 Our review of the record confirms that appellate review of the trial court's suppression of Luevano's statement to police would be in the best interests of justice. In his police statement, Luevano admitted stabbing the victim twice, though he claimed self-defense and defense of his cousin. Luevano also gave different versions of what happened over the course of his interview with De La Paz and was inconsistent on certain points. He maintained, however, that the stabbing occurred after he was attacked by Herrera and some other men.

¶18 On its face, Luevano's recorded interview statement is significant primarily because he admitted to stabbing the victim. The record does not contain a video of the crime itself. Indeed, defense counsel objected successfully at preliminary hearing to the victim's attempted reference to a video showing the crime. The only eyewitness testimony in this case so far was from the victim, and there is uncertainty whether he saw Luevano with the knife before the stabbing. Additionally, Herrera testified that Luevano's cousin was armed and standing nearby during the stabbing. The significance of Luevano's admission that he stabbed Herrera thus increases exponentially when considered against this evidentiary backdrop. We thus find that the State's ability to prosecute the case is substantially impaired or restricted absent the suppressed evidence. That is all the State is required to show to trigger our jurisdiction in this case. Based on the total record, we have jurisdiction over the present appeal.

IV

¶19 "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." Miranda, 384 U.S. at 478. Police must implement procedural safeguards to protect a suspect's privilege against self-incrimination under the Fifth and Fourteenth Amendments by warning him prior to any questioning that:

[H]e has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Id. at 479. See Dickerson v. United States, 530 U.S. 428, 435 (2000).

¶20 A suspect must be allowed the opportunity to exercise these rights throughout the interrogation and may only knowingly and intelligently waive these rights by agreeing to answer questions or make a statement after such warnings have been given. Miranda, 384 U.S. at 479. The Supreme Court, however, has "never insisted that Miranda warnings be given in the exact form described in that decision." Duckworth v. Eagan, 492 U.S. 195, 202 (1989).

¶21 The Supreme Court has observed that Miranda "has not been limited to station house questioning . . . and the officer in the field may not always have access to printed Miranda warnings, or he may inadvertently depart from routine practice, particularly if a suspect requests an elaboration of the warnings." Id. at 203. "Miranda warnings are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.'" Id. (quoting Michigan v. Tucker, 417 U.S. 433, 444 (1974)). A highly formalistic, technical approach when examining Miranda warnings is inappropriate. "The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by Miranda.'" Id. (quoting California v. Prysock, 453 U.S. 355, 361 (1981) (per curiam)). "[N]o talismanic incantation [is] required to satisfy its strictures." Id. at 203 (quoting Prysock, 453 U.S. at 359).

¶22 The ultimate question of the validity of a waiver of rights preceding a suspect's confession or statement is a legal question we review de novo. Hammick v. State, 2019 OK CR 21449 P.3d 1272See Miller v. Fenton, 474 U.S. 104, 110 (1985); United States v. Hernandez, 93 F.3d 1493, 1501 (10th Cir. 1996). We review the district court's findings of fact, if any, for clear error. See Hammick, 2019 OK CR 21

¶23 "A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly, and intelligently' waives his constitutional privilege." Colorado v. Spring, 479 U.S. 564, 573 (1987) (quoting Miranda, 384 U.S. at 444). Two basic inquiries govern whether a defendant made an effective waiver of his Miranda rights:

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Smith v. State, 1996 OK CR 50932 P.2d 521Moran v. Burbine, 475 U.S. 412, 421 (1986) (internal quotation omitted)); Spring, 479 U.S. at 573.

¶24 There is no evidence in the record that De La Paz coerced, intimidated, or threatened Luevano in any way. Nor does Luevano allege coercion of any kind by the officer. The voluntariness of Luevano's Miranda waiver is not at issue. Spring, 479 U.S. at 573-74. The question here is simply whether Luevano understood the rights at stake as set out in the translated Miranda warnings and the consequences of waiving them. See Burbine, 475 U.S. at 422; Coddington v. State, 2006 OK CR 34142 P.3d 437

¶25 We find, based on the totality of the circumstances, that the district court erroneously concluded that De La Paz's translation of the Miranda warnings was inadequate. "A translation of a suspect's Miranda rights need not be perfect if the defendant understands that he or she need not speak to the police, that any statement made may be used against him or her, that he or she has a right to an attorney, and that an attorney will be appointed if he or she cannot afford one." Hernandez, 93 F.3d at 1502.

¶26 The initial warnings given by De La Paz "touched all of the bases required by Miranda." Eagan, 492 U.S. at 203. The translated Miranda warnings reasonably conveyed to Luevano that he had the right to remain silent, that anything he said would be used against him, that he had the right to the presence of an attorney, and that if he could not afford an attorney one would be appointed for him prior to questioning. The officer's substitution of the word "treatment" for "statement" in the closing sentence of the warning--i.e., "if you decide to do a treatment, you can stop at any time"-- though unfortunate in no way undermined the effectiveness of the requisite core Miranda warnings conveyed to Luevano. The district court erred as a matter of law in finding that the State failed to prove by preponderance of the evidence that Luevano's waiver of his Miranda rights was not made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. See Smith, 1996 OK CR 50

¶27 Nothing about Luevano's intoxication that night undercuts this conclusion. See Coddington, 2006 OK CR 34Coddington v. Sharp, 959 F.3d 947, 959 (10th Cir. 2020). Nothing in the record before this Court demonstrates the level of "substantial impairment" from intoxication needed to render the Miranda waiver unknowing. Id. The record also does not demonstrate that Luevano's will was overborne by the circumstances surrounding the giving of his statement. Id. Appellant appeared to be alert and responsive throughout his police interview and appeared generally aware of the circumstances. All things considered, Luevano's statement to the police need not be suppressed. Relief is granted for the State's sole proposition of error. 

DECISION

¶28 The ruling of the District Court suppressing Luevano's statement to the police is REVERSED and this case is REMANDED to the district court for further proceedings not inconsistent with this opinion. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2026), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

AN APPEAL FROM
THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE MICHELLE KEELY, DISTRICT JUDGE

 
 
 APPEARANCES AT HEARING
 
 ELYSSA KOHLER
 ASST. DISTRICT ATTORNEY
 TULSA COUNTY
 500 S. DENVER AVE.
 SUITE 900
 TULSA, OK 74103
 COUNSEL FOR THE STATE
 
 
 BRIAN J. BOEHEIM
 BOEHEIM FREEMAN, PLLP
 616 S. BOSTON AVE.
 SUITE 307
 TULSA, OK 74119
 COUNSEL FOR DEFENDANT
 APPEARANCES ON APPEAL
 
 ELYSSA KOHLER
 ASST. DISTRICT ATTORNEY
 TULSA COUNTY
 500 S. DENVER AVE.
 SUITE 900
 TULSA, OK 74103
 COUNSEL FOR APPELLANT
 
 
 BRIAN J. BOEHEIM
 MIRANDA SNODGRASS
 BOEHEIM FREEMAN, PLLP
 616 S. BOSTON AVE.
 SUITE 307
 TULSA, OK 74119
 COUNSEL FOR APPELLEE
  
 
 

 

OPINION BY: HUDSON, J.
LUMPKIN, P.J.: CONCUR
MUSSEMAN, V.P.J.: CONCUR
LEWIS, J.: CONCUR IN RESULTS 
ROWLAND, J.: CONCUR

FOOTNOTES

See Jackson v. Denno, 378 U.S. 368, 376 (1964); Swager v. State, 2024 OK CR 12548 P.3d 794

Miranda v. Arizona, 384 U.S. 436 (1966).

See Rule 3.5(A)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2026); Baird v. State, 2017 OK CR 16400 P.3d 875Miranda warnings. The supporting arguments contained in the various sub-parts of the State's sole proposition of error directly undergird and support the main premise of Proposition I.